**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **MARY ANNE GRAYER,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 09 C 3924 |
| ) | |
| **MAYOR DWIGHT WELCH, individually and in his** ) | Judge Rebecca R. Pallmeyer |
| **official capacity as Mayor and Public Safety Director** ) | |
| **of the City of Country Club Hills, HENRIETTA** ) | |
| **TURNER, individually and in her official capacity as** ) | |
| **City Manager, DEBORAH McILVAIN, individually** ) | |
| **and in her official capacity as City Clerk, WILLIAM** ) | |
| **A. BROWN, individually and in his (former) capacity** ) | |
| **as Police Chief, THERESE O'DONNELL, individually** ) | |
| **and in her (former) official capacity as Deputy Police** ) | |
| **Chief, GREGORY A. SMITH, individually and in his** ) | |
| **former capacity as Sergeant, THE COUNTRY CLUB** ) | |
| **HILLS POLICE DEPARTMENT, THE CITY OF** ) | |
| **COUNTRY CLUB HILLS, a municipal corporation,** ) | |
| **OTHER UNKNOWN CITY OFFICIALS,** ) | |
| **EMPLOYEES, AGENTS OR INDEPENDENT** ) | |
| **CONTRACTORS THEREOF, MEREDITH PATE, in** ) | |
| **her official capacity as an agent of the** ) | |
| **Intergovernmental Risk Management Agency, City of** ) | |
| **Country Club Hills and its officials and employees.** ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

On June 29, 2009, Plaintiff Mary Anne Grayer ("Plaintiff") filed this *pro se* law suit against her former employer, the City of Country Club Hills Police Department and several other Defendants: the City of Country Club Hills; Mayor and Public Safety Director Dwight Welch, City Manager Henrietta Turner, City Clerk Deborah McIlvain, former Police Chief William A. Brown, former Deputy Chief Therese O'Donnell, and former Sergeant Gregory A. Smith (all officers of the City of Country Club Hills) in their individual and official capacities; and Meredith Pate and the Intergovernmental Risk Management Agency ("IRMA") (collectively "Defendants"). In her lawsuit, brought under 42 U.S.C. § 1983, Ms. Grayer claims she was harassed by Defendants and ultimately terminated from her position as police lieutenant in violation of her First, Fourth, Fifth and

Fourteenth Amendment rights. All Defendants have moved to dismiss the complaint, invoking FED. R. CIV. P 12(b)(6). For the reasons set forth below, Defendants' motions to dismiss are granted and Plaintiff's complaint is dismissed without prejudice.

## FACTUAL BACKGROUND

The following facts are drawn from Plaintiff's complaint and accepted as true for the purposes of these motions. Plaintiff had a twenty-plus year career as a sergeant with the City of Chicago Police Department. On October 18, 2004, she began working for the City of Country Club Hills Police Department as a police lieutenant. (Am. Compl. ¶¶ 5–6.) She was initially named Division Head of the Communications and Records Division, while also working on two narcotics investigations. (*Id.* at ¶¶ 6–9.) During the course of one of these investigations, Plaintiff "began to experience problems" with Defendant Smith. Specifically, she alleges that Smith "had exceeded his authority on several occasions and had also been found to have submitted some false or misleading reports." (*Id.* at ¶ 10.) She claims she notified Defendant Brown, who at the time was Police Chief, and Defendant O'Donnell, the Deputy Police Chief, about her problems with Smith, but they took no action to address the issue. (*Id.*) Instead, by late August 2006, Brown and O'Donnell allegedly began to harass her themselves.[1] (*Id.* at ¶ 16.) Plaintiff alleges that on September 6, 2006, Defendant Smith "went into a tirade" at her office door after he was informed (Plaintiff does not say by whom) about his "inappropriate handling" of a criminal case. (*Id.* at ¶ 17.) Smith allegedly "ranted and raved for several minutes in a threatening and intimidating manner while blocking the door of Plaintiff's office" and refused to leave. (*Id.*) Plaintiff alleges that she requested the presence of Defendants Brown or O'Donnell before speaking with Smith—suggesting the meeting was scheduled in advance—but they refused to attend the meeting. (*Id.* at ¶ 18.)

---

[1] Plaintiff provides no details about Defendant Brown and O'Donnell's harassment other than to note that she was excluded from various staff meetings and social events, and when she questioned Defendant Brown about her exclusion, "he stated he 'had been told who to invite.'" (Am. Compl. ¶ 16.)

Defendant O'Donnell, however, was in fact allegedly present during some portion of the Smith incident, but did not intervene. (*Id.*)

During the Fall of 2006, Plaintiff met with an attorney and also contacted the Equal Employment Opportunity Commission ("EEOC") regarding the circumstances at the Police Department (though she has not specifically so alleged, the court presumes Plaintiff believed the circumstances reflected discrimination). On October 27, 2006 Plaintiff was reassigned to the position of Administrative Lieutenant.[2] Throughout the several months preceding her eventual termination, Plaintiff alleges that she was continually harassed (she does not state by whom). (*Id.* at ¶ 20.)

In March 2007, Plaintiff learned of a civil suit filed by a former police detective and was asked to assist in the discovery process in the case. Plaintiff was away from work on medical leave from March 12 through May 6, 2007. During this period, Plaintiff alleges, she learned that Defendants Brown and Smith had made false statements in connection with the case, and she therefore requested and retained independent counsel through Defendant IRMA.[3] (*Id.* at ¶¶ 21–24.) On May 24, 2007, Plaintiff learned from other employees of the Department that her termination was imminent. In response to this news, she took elective time off and did not return to work until May 28, 2007. (*Id.* at ¶¶ 26–28.) On May 29, 2007, Plaintiff met with Defendants Brown and O'Donnell. At that meeting, she alleges, Defendant Brown questioned her in a "very threatening and hostile manner" about her reasons for seeking separate legal counsel in the pending civil case against the Department. (*Id.* at ¶ 28.) Plaintiff alleges that the meeting ended

---

[2] Plaintiff's complaint states that she was reassigned the day after she met with an attorney, and that she later learned that an individual present at the meeting with her attorney was previously a Police Department employee "well known" to Defendants Brown and O'Donnell. (Am. Compl. ¶ 19.) Why a third party sat in on her meeting with counsel is unexplained.

[3] The Intergovernmental Risk Management Agency ("IRMA")'s website describes IRMA as a "municipal risk pool" which provides liability coverages to local municipalities in northeastern Illinois. *See* http://www.irmarisk.org/Public/AboutIRMA/OverviewAboutIRMA.asp, last visited September 10, 2010.

when Defendant Brown "threw the door open and ordered [her] from his office." (Am. Compl. ¶ 28.) The following day, Plaintiff contacted the Mayor, Defendant Welch, as well as the City Manager, Defendant Turner, to inform them of the incident with Defendant Brown and request a meeting. (*Id.* at ¶ 30.) Plaintiff alleges that neither Welch nor Turner agreed to meet with her. (*Id.*)

During June 2007, Plaintiff claims, she made several attempts to obtain copies of various city ordinances, "specifically those pertaining to the Police Department and Peronnel regulations," from the City Clerk, Defendant McIlvain. (*Id.* at ¶ 33.) She forwarded copies of her memo about the matter to Defendants Brown, Turner, and Welch. None of the Defendants provided her with copies. (*Id.*) On June 22, 2007, Defendant Brown reprimanded Plaintiff for having requested updated ordinances from Defendant McIlvain without having first consulted him. (*Id.* at ¶ 34.) Later that day, Plaintiff filed a complaint with the EEOC and the Illinois Attorney General's Office.[4] (*Id.* at ¶ 35.)

Finally, on June 26, 2007, Plaintiff met with Defendant Welch for what she believed was an interview regarding her eligibility for promotion. (*Id.* at ¶ 36.) At the meeting, Welch announced that as the result of an ordinance adopted the previous day, giving Mayor Welch "complete control" over the appointment of police lieutenants, all at-will employee-lieutenants were required to resign their positions immediately. (*Id.* at ¶ 37.) Welch allegedly announced that "if Plaintiff did not submit a resignation he was going to 'let her go.'" (*Id.* at ¶ 38.) Plaintiff alleges that until the amendment was adopted by the City Council on June 25, police lieutenants served "at the pleasure of the Police Chief," but were removed only for cause and were entitled to a hearing before the Mayor and City Council on request. (*Id.* at ¶ 37.)

On June 28, 2007, Plaintiff informed Defendant Brown that she refused to resign and that she had filed an EEOC complaint. (*Id.* at ¶ 40.) Later the same day, Plaintiff received a letter from Defendant Welch terminating her employment with the Department, effectively immediately. (*Id.*

---

[4] Plaintiff does not indicate the nature of her EEOC charge.

at ¶ 42.) Plaintiff claims that she was escorted to her office by Defendant O'Donnell to pack up her belongings, but was not allowed to finishing packing because Defendant Brown "indicated he would 'go through it' and [that she should] pack it later." (*Id.*) Plaintiff describes Defendant Brown's demeanor as "angry and intimidating." (*Id.* at ¶ 43.) Plaintiff alleges that she was not allowed to return to finish packing the belongings in her office until July 2, 2007. (*Id.* at ¶ 44.) Plaintiff filed this complaint on June 29, 2009 seeking compensatory and punitive damages from all named Defendants.

## **DISCUSSION**

Defendants have moved to dismiss Plaintiff's complaint, pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted. When considering a motion to dismiss, the court accepts all allegations in the complaint as true and draws all reasonable inferences in the light most favorable to the plaintiff. *Michalowicz v. Village of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008). A complaint will survive a motion to dismiss even without "detailed factual allegations" as long as it provides allegations that "raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal is appropriate when there exists no set of facts supporting the claim that would entitle Plaintiff to recover. *Harris v. City of Auburn*, 27 F.3d 1284, 1285 (7th Cir. 1994), *citing New Burnham Prairie Homes, Inc. v. Village of Burnham*, 910 F.2d 1474, 1477 (7th Cir. 1990).

Plaintiff filed this action under 42 U.S.C. § 1983, alleging that Defendants conspired to violate her rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment, interfered with her right to free speech under the First Amendment, and violated the Fourth and Fifth Amendments by temporarily denying her access to her office upon her termination.[5] The court will address each of these claims below, as well Plaintiff's specific claims

---

[5] Plaintiff also briefly alleges certain state law claims—conspiracy, retaliation, harassment, defamation, and tortious interference—yet provides no accompanying factual context
(continued...)

5

against Defendant IRMA and Defendant Pate for extortion.

## A.     Procedural Due Process Claim

Plaintiff argues, first, that she had a "'property interest' in her employment and was unjustly deprived of it" when Defendants failed to provide her with a hearing prior to her termination. (Pl's Resp. to Country Club Hills' & Mayor Dwight Welch et al Mot. to Dismiss. ¶¶ 18–19.) In order to maintain a successful due process claim under § 1983, a plaintiff must demonstrate that (1) she "suffered a deprivation of a cognizable property interest" and (2) the "deprivation occurred without due process." *Omosegbon v. Wells*, 335 F.3d 668, 674 (7th Cir. 2003), *citing Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

Defendants urge that Plaintiff's due process claim fails because her employment contract defeats any suggestion that she had a property interest in continued employment. Defendants argue that Plaintiff's employment contract and the relevant ordinance governing police lieutenants together amount to an at-will employment relationship, and hence, Plaintiff had no protected property interest in her employment with the Police Department entitling her to notice and an opportunity to be heard before her termination. Plaintiff urges that she was not an at-will employee as described in her employment contract because the form she received was drafted in August 2004. She did not sign the agreement until she officially began work in October of that year; therefore, she reasons, "[the agreement] was not intended to be presented to [her]." (Pl's Resp. to Country Club Hills' & Mayor Dwight Welch et al Mot. to Dismiss. ¶¶ 7–10.)

The court agrees with Defendants. To determine whether an employee has a property interest in continued employment, the court must refer to state law. *See Omosegbon*, 335 F.3d at 674. Plaintiff bears the burden of establishing a property interest in her job arising out of a state

---

[5](...continued)
or support. Given the court's decision to dismiss the federal claims over which it has original jurisdiction, the court will relinquish jurisdiction over the pending state law claims and dismiss those claims without prejudice. 28 U.S.C. § 1367(c)(3); *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994).

or municipal law or regulation, or a contract that creates such an interest. *Krieg v. Seybold*, 481 F.3d 512, 519 (7th Cir. 2007), *citing Ulichny v. Merton Comty. Sch. Dist.*, 249 F.3d 686, 700 (7th Cir. 2001)  Illinois employment is presumed to be "at will," and "'it is well settled that, absent legislative, administrative or contractual provisions to the contrary, a public employee in Illinois holds his office at the pleasure of the appointing power, which may remove him at any time.'" *Roth v.Yingling*, No. 10 C 64, 2010 WL 2732304 at * 5 (N.D. Ill. July 8, 2010) (Coar, J.), *citing Harris v. Eckersall*, 331 Ill. App.3d 930, 116, 771 N.E.2d 1072, 1075 (1st Dist. 2002) (collecting cases).  At the time she began working for the City of Country Club Hills, Plaintiff signed a one-paragraph document titled "Employment At-Will Agreement" stating: "Employment with the City of Country Club Hills is 'at-will,' meaning that either the City or its employees may terminate the employment relationship at any time, with or without cause, and with or without notice." (Employment Contract, Ex. B to Def's Mot. to Dismiss.)

In support of her due process claim, Plaintiff ignores the language of her agreement and instead suggests that until June 25, 2007, Country Club police lieutenants had a right under the city code to termination only for cause.  Plaintiff suggests that the Ordinance adopted on June 25, 2007 purported to strip lieutenants of that right.  The earlier ordinance, however, furnished by Defendants in support of their motion to dismiss, defeats that interpretation.[6]  That document makes clear that persons hired for the position of lieutenant from outside the rank and file of Country Club Hills officers had no protected property rights in their positions as lieutenants: The earlier ordinance provided that a lieutenant promoted to that position from within could be bumped down to his position on the police force, but for a lieutenant appointed from outside, without prior experience

---

[6] The court may take judicial notice of a municipal ordinance without converting this motion to one for summary judgment. See *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994), *citing Venture Assocs. v. Zenith Data Systems*, 987 F.2d 429, 431 (7th Cir. 1993) (reaffirming that "documents attached to a motion to dismiss are considered part of the pleadings [and may be considered by a district court] if they are referred to in the plaintiff's complaint and are central to his claim.")

7

on the force, "employment shall be terminated in accordance with any agreement between the City and such lieutenant." (Ex. A to Def's Mot. to Dismiss.)

In short, the pre-amendment Ordinance does not provide Plaintiff with any protected property interest in continued employment as a lieutenant. Nor is the court persuaded by Plaintiff's assertion that the one-page agreement she signed did not in fact apply to her. Plaintiff does not dispute that she signed the contract, nor does she claim that the contract was later modified. The court concludes Plaintiff was an at-will employee, with no protected property right in continued employment. Her procedural due process claim is dismissed.

**B.     Equal Protection Claim**

Plaintiff's equal protection claim is somewhat difficult to discern, but she appears to argue that she was denied equal protection when Defendants Welch and Turner denied her request for a meeting on May 30, 2007. Defendants urge, first, that the claim is barred by the two-year statute of limitations applicable to §1983 claims in Illinois. *See* 735 ILCS 5/13-202. (Def.'s Mot. to Dismiss at 7.) Plaintiff has declined to respond to this argument, and the court agrees that any challenge to Defendants' conduct on May 30, 2007 is barred.

In any case, as Defendants note, in *Engquist v. Oregon Dep't. of Agr.*, 128 S. Ct. 2146 (2008), the Supreme Court held that "the class-of-one theory of equal protection does not apply in the public employment context." *Id.* at 2151. The court agrees that *Engquist* applies here, as Plaintiff does not claim she was treated differently based on her membership in any particular class.[7] Her equal protection claim is dismissed.

**C.     Free Speech Claim**

Plaintiff asserts that Defendant McIlvain's failure to provide her with the updated city ordinances pertaining to the Police Department and Defendant Brown's subsequent reprimand for

---

[7]     Although Plaintiff allegedly sought out the assistance of the EEOC, she has not invoked Title VII or other statutes for which a charge of discrimination must first be filed with that agency.

8

requesting those ordinances constituted a violation of the First Amendment and the Illinois Constitution. (Am. Compl. ¶¶ 33–34.) Plaintiff seems to argue that Defendant Brown retaliated against her for having made a request that any citizen could have submitted. Plaintiff is correct that a public employee has a right not to suffer retaliation for her speech on a matter of public concern. Defendants nevertheless urge that her claim is defeated by *Garcetti v. Ceballos*, 547 U.S. 410 (2006). The Court held there that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421.

Plaintiff has not responded to this argument and the allegations of her complaint do suggest that when she wrote to Defendant McIlvain demanding copies of the new ordinances, Plaintiff was not speaking as a citizen on a matter of public concern, but rather as a city employee. Indeed in her memo to Defendant McIlvain, Plaintiff herself stated that she was "making the request [for the ordinances] as a City employee and member of the police command staff" because she was "assigned to update and write policy for the Department." (Letter from Grayer to McIlvain of 6/20/07, Ex. D to Def.'s Mot. to Dismiss.) She explained that her request was made "in such a capacity"—that is, as a member of the police command staff—not "under the Freedom of Information Act." (*Id.*) And she confirms that Police Department staff needed "a complete and updated set of ordinances if its personnel is to perform their duties in a legal and effective manner." (*Id.*) Those allegations appear to defeat Plaintiff's First Amendment claim. *See Callahan v. Fermon*, 526 F.3d 1040 (7th Cir. 2008) (police lieutenant's statements were required by his job duties and therefore did not trigger First Amendment protection). The only suggestion to the contrary is an undeveloped assertion in her complaint that Defendant Brown reprimanded her "for making a request that any citizen could make." (Am. Compl. ¶ 34.) The court concludes that Plaintiff's First Amended claims must be dismissed. Any amended complaint must address the concern raised by Defendants that she made the request pursuant to her official duties, and their argument that to the extent it rests on Brown's June 22 reprimand, the claim is time-barred.

9

### D.     Fourth and Fifth Amendment Claims

Plaintiff argues that her Fourth and Fifth Amendment rights were violated when she was denied access to her office from June 28, 2007 to July 2, 2007. (*Id.* at ¶ 44(a).) Defendants argue that a one-weekend delay in allowing Plaintiff to return to the Police Department to obtain her personal property does not violate the Constitution. The court agrees. The Fourth Amendment does not require a public employer to obtain a warrant before conducting a search of an employee's office, *United States v. Fernandes*, 272 F.3d 938, 942 (7th Cir. 2001), though "government employers [are] subject to a reasonableness standard when they conduct . . . workplace searches." *Schaill by Kross v. Tippecanoe County Sch. Corp.*, 864 F.2d 1309, 1314 (7th Cir. 1988), *citing O'Connor v. Ortega*, 480 U.S. 709, 724 (1987). A workplace search is deemed reasonable "if it is 'justified at its inception' and if it is 'reasonably related in scope to the circumstances' that prompted the search." *Gossmeyer v. McDonald*, 128 F.3d 481, 491 (7th Cir. 1997), *citing Ortega*, 480 U.S. at 726. Unlike the situation in *Gossmeyer*, where the employee's office was searched as part of a criminal investigation; there is no indication here that Plaintiff was under investigation at all; but Plaintiff does not claim that her office was in fact searched at all. Her sole allegation is that she was required to wait over the weekend to retrieve her personal belongings and that Defendant Brown warned that he planned to search her office. Plaintiff has not explained why the brief delay in allowing entry to her office over the weekend (and without any accompanying search) was unreasonable. Her Fourth and Fifth Amendment claims are dismissed.

### E.     Claim Against Defendant Pate and IRMA

Finally, Plaintiff has asserted claims against IRMA and Meredith Pate, an attorney who represented the City of Country Club Hills on various legal matters.[8] Following her termination, Plaintiff filed a claim with the Illinois Department of Labor claiming that she had been denied a number of paid vacation days. The City offered to pay her the outstanding balance that was due,

---

[8] Though this claim arises under state law, the court exercises its discretion to address it here.

but Plaintiff alleges that Defendant Pate, the attorney representing the City, sent her a form that "required Plaintiff to relinquish any and all rights to seek legal redress of any grievances or illegal actions against Country Club Hills and its officials." (Am. Compl. ¶ 52.) Plaintiff claims that Defendant Pate acted as an "agent" of Defendant IRMA, and that Pate's request that Plaintiff sign the release form constituted "an attempt to extort Plaintiff by withholding salary legally due . . . ." (Am. Compl. ¶ 55.) Defendant Pate rejects Plaintiff's extortion allegation, stating in her affidavit that she "drafted a standard satisfaction and release on behalf of Country Club Hills . . . ." (Pate Aff. ¶ 6.) Defendant IRMA argues that Defendant Pate was not an agent of IRMA in handling Plaintiff's wage dispute,[9] (Def. IRMA's Mot. to Dismiss 6-7) and Plaintiff herself alleges that Pate "represented the City and its officials on this matter." (Am. Compl. ¶ 52.)

Putting aside whether Defendant Pate was or was not an agent of IRMA, the court agrees that Defendant Pate's attempt to settle Plaintiff's wage claim does not constitute extortion. "Extortion is the use of threats to obtain leverage in a situation in which the victim has no feasible legal remedy . . . ." *Sufrin v. Hosier*, 128 F.3d 594, 599 (7th Cir. 1997). Release agreements are a standard practice in resolving disputes, including disputes over wages. Illinois presumes the validity of releases, favoring the "peaceful and voluntary resolution of claims," *O'Brien v. Encotech Const. Services, Inc.*, 183 F. Supp. 2d 1047, 1049 (N.D. Ill. 2002), unless the agreement is the "product of fraud, duress mutual mistake or unconscionability." *Gavery v. Altheimer & Gray*, No. 95 C 2747, 1996 WL 521400, at *3 (N.D. Ill. Sept. 11, 1996). Plaintiff here has not alleged that the release agreement at issue was a product of any of the above; she appears to believe that the very act of attempting to settle one claim by extinguishing another constitutes extortion. But Plaintiff was free at any time to reject Pate's offer. She was not the victim of extortion.

## CONCLUSION

---

[9] Defendant Pate also stated in her affidavit that she did not act on IRMA's behalf, nor did she consult with IRMA during her representation of the City in Plaintiff's wage dispute. (Pate Aff. ¶ 3–6.)

For the foregoing reasons, Defendants' motions to dismiss [31, 48, 79] are granted and all claims are dismissed without prejudice. Plaintiff has leave to file an amended complaint within 21 days.

ENTER:

Dated: September 14, 2010

REBECCA R. PALLMEYER
United States District Judge